The opinion of the Court was delivered by
Bargan, Ch.
Elizabeth Wherry White is the widow and sole administratrix of Francis White, and she and the defendant jane White, the only child of the said Francis White, are his heirs at law and distributees.
The plaintiffs are the creditors of Carter Lee, and seek by these proceedings to vacate certáin conveyances of property, both real and personal, by Lee to White the intestate, which they allege to have been in fraud of Lee’s creditors.
It would be unprofitable for me to encumber this opinion with a statement in detail of all the pleadings and proceedings which have taken place in the progress of this earnestly contested cause, or of the voluminous evidence which has been adduced by the different parties. It will be sufficient for me to notice such of the pleadings, and such of the fac.ts as will render intelligible what I now have to say.
The bill in substance charges, that all the estate, real and personal, of Dr. Carter Lee, and all his choses in action had *97 been conveyed by the said Lee, or by the sheriff, with his consent, and by his contrivance, to Francis White, in the years 1840 and 1841, to secure and indemnify him for various sums of money advanced for the payment of Lee’s debts ; and upon the trust and confidence, that after these advances of money had been repaid to White, by cash, the hire of the negroes, and the transfer of choses in action, the negroes, and the other property thus obtained by White should be restored to Lee, or be held in trust for his benefit. The plaintiffs further charge, that bills of sale were made by Lee to White at different dates in the year 1840, for five slaves, namely: Dave, Alick, Anonymous, Jeff and Caty; and that on sale day in July, 1841, White purchased, with the consent, and by contract with Lee, and on the same conditions and trusts, all the remaining negroes of Lee, namely: Emily, Mary, Savilla, and her two children, Green and Yiolet, at the price of $3,305. It is further charged that Lee paid for the house and lot where he resides, purchased by him from John Kennedy, but that the title was made to White; that he assigned to White certain notes, tools for working in tin, blacksmith’s tools, &c., his interest in his father’s estate, and paid considerable sums in cash for the purpose of reimbursing White for the moneys which he had advanced the said Lee, and that these assignments were upon the same trusts. These are substantially the allegations of the bill; which was filed on the 22d of May, 1849.
The answer of Elizabeth W. White, the administratrix of Francis White, denies all the material allegations of the bill; denies positively the fraud and the trust; alleges, that all the transfers of property by Lee to White were made to him absolutely, and without condition, or trust, and that the choses in action were paid for in cash. She also sets up the statute of limitations as a plea in bar to the plaintiff’s claim.
Chancellor Wakdlaw, hy an order filed 30th October, 1851^ directed issues to be made up and submitted to a jury in the Court of Law. The order is as follows: “ It is ordered and decreedj that issues be made up in the Court of Common Pleas for Ches *98 ter district, in which the plaintiffs in the present bill shall be the actors, and Elizabeth White and Jane White shall be the defendants, to try whether the conveyances and transfers of the real and personal estate of Dr. Carter Lee to Francis White in his life time, or any of them, whether made directly by said Lee, or through the sheriff, or the mother or legatees or distribu-tees of the father of the said Lee, were made with the design to defeat, delay or hinder the creditors of said Lee, or with any other fraudulent purpose; or whether the same were made upon any secret trust for the benefit of said Lee ; and whether the purchase money, or other advances of money made by said White,to Lee, have been reimbursed by said Lee to White in the whole, or. to any,, or what extent. And that on the trial of said issues, the answer of Elizabeth White, so far as it is responsive to the allegations of the bill, a'nd the testimony in this cause as reduced, to writing by the Chancellor, or the Commissioner in Equity, may be used as evidence by either party.”.
At Spring Term 1852, the issues as directed by the foregoing order, having been made up,.were submitted to a jury and tried. The presiding Judge has reported the verdict , together with the evidence. .The following is the verdict of thejury :
“ We find that the deed of conveyance by Joel Patterson and others for the nine acres of land, and the deed by Lucy and Carter Lee for the interest of Carter Lee in the estate of Elliot Lee his father, and the several bills of sale and assignment of the n.egroes named, in the bill, were made to Francis White to secure advances of money made by him to Carter Lee; and upon the trust, that the property should be re-vested in Carter Lee; when these advances- were paid. We further find, that the alleged advances -by White to Lee, and payments by Lee to White, cannot be properly ascertained by us, but should be accounted for.”
The case came on for trial at July Term, 1852: the Chancellor who presided, confirmed the verdict. He also decided that the transfers of property by Lee to White, were mala fide and fraudulent.- He gave leave to the plaintiffs to amend their *99 bill, so as to charge, that they had only discovered the fraud within four years previous to filing their bill. He also ordered, that the Commissioner take and report a statement in detail of the plaintiffs’ claims; also an account of the sums paid and advanced by White, (the plaintiffs in their bill admitting that these should first be paid;) and also an account of the reimbursements made by Lee, with interest on both sides, and what balance remains due in favor of White on said account. Also that he include on the side of reimbursement the hire of the slaves as prayed, and all proper reimbursements, and that he state any special matter.
The plaintiffs filed an amended bill, in pursuance of the order of the Court giving them leave to do so; and to this amended bill the defendants filed a demurrer.
The case came on again for trial at July Term, 1853. The Commissioner ■ then submitted his report upon the accounts taken in pursuance of the directions of the decree of July Term, 1852. The case was heard upon the demurrer of the defendants, and upon the report and exceptions thereto. The demurrer was overruled, and the report was confirmed. And this is an appeal from the decree overruling the demurrer and the exceptions to the report, and from the previous decisions made in the case.
As to the demurrer, it will be as well here to say, that this Court concurs with the Chancellor who overruled the said demurrer, and for the' reasons stated by him. And so much of the appeal as relates thereto is hereby dismissed. (a)
*100 Preliminary to the issues as to the fraud, is the question which arises under the statute of limitations. For if the plaintiffs are barred by the statute, it will be unnecessary to look farther into the case. And anterior to this, is another question, the decision of which may greatly aid us in coming to a satisfactory conclusion. The latter question may be stated thus: When the plaintiff, with the view of evading the bar of the statute of limitations, alleges that the fraud was discovered within four years, (or within a period in which the statute will be no bar,) upon which party does the onusprobandi lie, of shewing the want of notice ? Does it lie with the plaintiff who alleges the want of notice, or with the defendant who interposes the bar of the statute? Whether the onus lies with the plaintiff) or the defendant, will in the most of cases seriously affect the result of the issue as to the applicability of the statute.
The English cases on this subject are confused and contradictory, and the point has never been adjudged in our Courts.
In the prosecution of this enquiry, and in the solution of the question, it will not be improper to resort to the philosophy of evidence. From the nature of man, and from the circumstances by which he is surrounded, it is rarely possible to establish the negative of any proposition involving an issue of fact in the common transactions of life. Whether the plaintiff has had a knowledge of the fraud for more than four years before the filing of his bill, though he asserts it, is a negative proposition-And while man has the power of veiling his thoughts, it would be difficult in many, and impossible in most cases, to prove it by evidence. For though it might be shewn that he did not have the information from this source or from that — from one or from *101 many individuals, non constat that he did not have it from other sources or from other persons. It is a rule in pleading of almost universal application, that the onus is with the party who is interested in establishing the affirmative. And until the affirmative is proved, or prima facie proved, it is not necessary for the adverse party to oifer any evidence.
The ground upon which the Court of Equity applies the statute of limitations is the laches of the plaintiff. He is required to prosecute his claim with a reasonable diligence. But how can laches be imputed to him who is ignorant of the fraud? When the defendant pleads the statute of limitations, the plaintiff in an artistic system of pleading might reply, that the statute does not apply, because he had notice only within the statutory period. But as we have no replications in this Court, the plaintiff may allege the want of notice in his bill, in anticipation of the plea. This must arrest the operation of the statute until the defendant, who is in the affirmative of the question, by proof brings his case within its provisions.
I wilhconclude what I have to say upon this branch of the subject, by referring to the separate opinion of Chancellor Johnston in Thrower vs. Cureton, 4 Strob. Eq. 155, where the authorities are collated.
On the trial then of this question of notice, it was incumbent upon the defendants to prove that the plaintiffs had notice of the fraud more than four years prior to the filing of the bill. And here it is to be remarked, that it would not be sufficient to prove that the plaintiff had a suspicion of the fraud. But it is necessary to bring home to the defendant a knowledge of the facts constituting the fraud. Suppose some one were to tell him that a fraud had been committed, it would not be sufficient, unless he were informed of the facts constituting the fraud, or put in the possession of a clew, by which, with a proper diligence he might come to a knowledge of the facts. He would not to be required to enter into a costly contest, which would end in disappointment and defeat, or to encounter a shadowy and intangible phantom, which was sure to elude his attack. *102 But when a knowledge of the facts constituting the fraud are brought home, or the means by which a knowledge of those facts might by proper diligence have been obtained, — then the statute begins to run, and not before.
Having thus defined the principles which must govern us in the decision of this question of notice, I proceed to apply them to the case under judgment. That the plaintiffs or some of them had a strong suspicion of the fraud at the very period of its perpetration, is abundantly clear from the evidence. But we are not satisfied from the evidence, that the plaintiffs had such a knowledge of the facts, constituting the fraud, as would have authorized them to proceed with any reasonable prospect of success. Indeed, we think that the negative of the proposition comes nearer to being established than the affirmative. It was only after the fraudulent and corrupt pact between Lee and White had been broken by the representatives of the latter, and Lee, under the influence of resentment and malice, had betrayed his confederate and exposed his own infamy, that the plaintiffs were put in possession of the clew to this labarynth of fraud. The Chancellor who tried the cause, decided, that the proof did not authorize the belief that the plaintiffs did have notice of the fraud more than four years before the institution of their suit. And upon a careful examination of the evidence, we concur in that opinion. The plea of the statute of limitations was therefore properly overruled.
This brings me to the consideration of the issue as to the fraud. To prove the fraud, Lee himself was examined as a witness, the defendants insisting upon his incompetency. The ground of this objection was, that his testimony tended to create a fund to satisfy the claims of his creditors. On the other side it was contended, that his interest was in a state of equipoise. In the opinion of this Court, it will not be necessary to decide the question of Lee’s competency. It appears, that neither the Commisioner nor the Chancellor laid much stress upon his evidence. And this Court is of the opinion, that throwing Lee’s testimony aside, there still remains evidence amply sufficient to *103 establish the fraud. It would be unprofitable, as I have said, for me to enter into a detailed statement of the facts that were proved. It will suffice to say, that setting aside the evidence of Lee as incompetent, this Court is convinced that the alleged fraud has been satisfactorily proved.
It is ordered and decreed, that the Circuit decree be affirmed and the appeal dismissed.
Johnston, Dunkin, and Wardlaw, CC., concurred.

Appeal dismissed.

 So much of the Circuit decree as relates to the demurrer is as follows:
Dunkin, Ch. It may be proper to premise that by the deoroo of Chancellor Johnston leave was granted to the plaintiffs to amend their bill by stating that the fraud was not discovered until within four years of instituting those proceedings. The amendment was accordingly made, to which the defendants filed a special demurrer. The principal ground seems to be, that the amendment was not verified by the oath of the plaintiffs-It may be remarked that the original bill was not filed on oath, nor does it seem to hare been necessary. The amendment relies on a fact to take the case out of the Statute; and, as the decree declares that this averment oasts the onus on the defendants, it may be that it should havo been supported by the oath of some of the plaintiffs. If the defendants had objected to the filing on this ground, or had moved to take it off the file, it would have *100 given the plaintiffs an opportunity to remove an objection which is of doubtful validity. But the defendants thought proper to file a special demurrer, and mingled this with other grounds dearly untenable, and then objected to any proceeding by tho Commissioner, under tho reference ordered, until the judgment of the Court was had on this special demurrer. The Commissioner overruled the objections, and heard the testimony, which established that the important facts could not have been well known to the plaintiff,’, until after the death of defendants’ intestate in 1848. Tho Court overruled the demurrer at the hearing.